## Ayars State Bank et al., Appellees, v. Oliver Standley et al., Appellants.

### Gen. No. 8,097.

1. APPEAL AND ERROR—*right to dismiss for not filing proper abstract.*
An appeal is subject to dismissal for failure to present an abstract
under the rules.

2. FRAUDULENT CONVEYANCES—*what is not valid consideration for
conveyance.* A conveyance by husband and wife by quitclaim deed of
a farm some ten minutes before the entry of judgments against them
held to be in fraud of creditors on evidence showing that the only con-
sideration was one dollar and a quitclaim to timber land to which the
grantor had no title.

3. FRAUDULENT CONVEYANCES—*what constitutes grantee's knowledge
of fraud.* A grantee who gave as consideration for a farm a quitclaim
to timber land to which he had no valid title and cash of one dollar
was held to have guilty knowledge of the fraud of his grantors as
against their creditors in making such conveyance to him on evidence
that letters between the grantee and his grantors were fictitious, that
the deed from the grantees was an afterthought, and further showing
that the grantee had let the farm be bought in for taxes by an officer
of his bank.

Ayars State Bank v. Standley, 246 Ill. App. 296.

Appeal by defendants from the Circuit Court of Shelby county; the Hon. F. R. DOVE, Judge, presiding. Heard in this court at the April term, 1927. Affirmed. Opinion filed October 31, 1927.

W. L. KELLEY and WARD & PUGH, for appellants.

J. J. BAKER, *pro se*, S. S. CLAPPER and GEO. B. RHOADS, for appellees.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

In this cause we have been compelled to search the record to ascertain who were the parties defendant in the circuit court and appellants in this court. The appeal is subject to dismissal for failure to present an abstract under the rules.

Appellees, having severally recovered judgments against appellants Oliver Standley and Pearl Standley in the circuit court of Shelby county, on October 17, 1923, for the total sum of $10,000.55, and executions issued upon said judgments having been returned "not satisfied," presented their bill of complaint to that court to set aside a conveyance by quitclaim deed made by appellants Oliver Standley and Pearl Standley, husband and wife, purporting to convey to appellant J. E. Dazey, then president of the First National Bank of Findley, eighty acres of land, with the crops thereon, in Shelby county. It was charged and proven that Oliver Standley owned an undivided one-half interest in said lands; that Pearl Standley owned a life estate in the other undivided one-half interest, and that the eighty acres was free from all incumbrances, and charged that the lands were of the value of sixteen thousand dollars. The deed stated a purported consideration of one dollar only and was filed for record about ten minutes before the entry of the judgments. Appellants Standleys lived upon

the lands and, with eighty acres adjoining which were leased, worked the same as a farm, upon which, at the time of said conveyance, there was a considerable amount of corn standing "not shucked," and Oliver Standley had a considerable number of horses, a tractor, stock and farm tools with which he farmed and worked said lands. Later, on March 14, 1924, appellant Oliver Standley presented his petition to the United States District Court for the Eastern District of Illinois, praying to be adjudicated a bankrupt. In this petition appellant scheduled indebtedness in addition to said judgments, a personal property tax of $27 and $55.40 of indebtedness only. He listed property—household goods—of the value of $35, one cow and three calves of the value of $50, and two hundred bushels of corn of the value of $100, all of which was claimed as exempt property, and in addition appellant scheduled a section of land known as section five, further described as being in Chicot county, Arkansas, subject to an incumbrance of $8,300 and as of the value of $17,300. This land, purporting to have been conveyed by appellant J. E. Dazey to Oliver and Pearl Standley, on October 17, 1923, for a purported consideration of one dollar, was presented to this suit and to the bankruptcy court as the consideration which appellant Dazey pretended to give to the Standleys for the eighty acres of land in Shelby county. The deed had never been recorded. It purported to have been acknowledged before one C. E. Coventry, who was an assistant cashier in Dazey's bank, on said 17th day of October, 1923. The United States District Court refused to adjudicate Oliver Standley as a bankrupt on the ground of fraud. One J. J. Baker was appointed trustee in bankruptcy by that court, and the trustee has filed a supplementary bill in this suit and now becomes the appellee in this cause.

The decree found that the conveyance of the Standley land to appellant Dazey was without consideration

and was made by appellants with the fraudulent intent
of hindering and delaying the appellees as judgment
creditors in the collection of their debts, and that ap-
pellant Dazey had knowledge of said fraudulent pur-
pose and participated in the fraud.  The decree fur-
ther found that the Arkansas land was of no value and
set aside the conveyance by the Standleys to Dazey
as to the judgments, subject to the homestead right
of Oliver Standley and Pearl Standley in the eighty
acres of land in Shelby county.  Appellants have ap-
pealed.

It is contended by appellants that there was a good
and valid consideration paid by Dazey for the Stand-
ley land, and that Dazey was not a party to and had
no knowledge of any fraudulent intent to defraud the
appellees.  It is insisted by appellants that the record
does not establish a fraudulent transaction.  We have
read the testimony carefully and examined the ex-
hibits and given both due and ample consideration.
There is no contention about the law applicable to the
case.  The lands in Arkansas were ''cut over,'' stump
lands, not situated upon a public highway, having no
earning value, incumbered by a mortgage to the
amount of $8,300 and in which appellant Dazey and
his grantor, one Vennum, connected with Dazey in
the bank, neither had any legal or equitable title.  It
was shown by voluble letters, purporting to have been
written by Dazey to Standley shortly before the trans-
action, that Standley should under no consideration
think of making the trade unless Standley's three sons,
all of whom were engaged in other farming operations
or occupations, would join him, and he provided for
a large sum of money to erect buildings, saw mills and
development improvements for which purposes Dazey
proposed to loan Standley a small portion of the req-
uisite sum, namely, five thousand dollars.  Standley
and Dazey lived only about ten miles from each other

and were connected by telephone, yet they appear to have written letters to each other of great length in regard to this transaction shortly before October 17, 1923. The envelopes nowhere appear. Dazey appears by the letterheads to be president of the First National Bank of Findley and an attorney at law. Vennum was cashier of the bank and Coventry was assistant cashier. One letter appears under date of August 20, 1923. In the letter Dazey states: ''I want you to fully understand that I would not advise you to make a trade for this land unless yourself and boys are to move on it and go to work developing it, and I will not make a loan of $4,800 a section unless it is understood that you are to move on it as above stated. I realize that it is some task to move and get settled and that I would not require you to do so under one year.'' The substance of this statement is repeated three or four times in this letter. Under date of October 12, 1923, Dazey purports to write Standley another letter acknowledging a purported letter from Standley in which Standley has agreed to trade lands. In this letter Dazey agrees to loan Standley five thousand dollars and two or three times it is reiterated: ''I have explained to you that you do not get the right to the hickory timber that is in litigation, and you are getting the right to redeem. I wanted you to know just how it all stands, and I agree to furnish $5,000.00 for that purpose. I want you to know just what you are getting, as I told you without your labor I do not think this would be a good trade for you, but even just yourself with what nigger help you could hire I then think it would be a good trade,'' etc. The letters pretend to state that Vennum owns the land and if the trade is made Dazey will have to purchase the lands from Vennum. As to Vennum's title to the lands in question, the Jackson-Vreeland Land Corporation on December 31, 1919, conveyed said section five, with other

lands, to Munsell and Askins, subject to a mortgage
for $20,400, which grantees assumed and agreed to
pay.  On April 10, 1920, Munsell and Askins conveyed
said section five to E. M. Vennum, subject to a mort-
gage for $4,800.  In April, 1922, upon a foreclosure by
the Bank of Saginaw, Michigan, against the Jackson-
Vreeland Land Corporation upon the mortgage men-
tioned, the title to all of section five had passed to the
Bank of Saginaw by a commissioner's deed, and said
lands were owned by the Bank of Saginaw on Octo-
ber 17, 1923.  The laws of Arkansas provide that upon
the foreclosure of a mortgage the owner of the land
when in possession may redeem within one year after
the sale.  On January 8, 1923, Vennum brought suit to
redeem.   He was not able to establish possession.
Nothwithstanding possession, the Bank of Saginaw of-
fered to accept its money, whereupon Vennum suf-
fered a nonsuit and did not pay.  On November 26,
1923, Vennum filed a *lis pendens,* and another suit to
redeem, regardless of his conveyance to Dazey, and
was defeated.

It is interesting to note the deed (quitclaim) which
is represented to have been given by Vennum to Dazey
on *September 22, 1923,* and which recites: "This deed
is subject to all existing record liens, as well as all
accrued taxes and special assessments against said
lands, and the rights to *ascertain* suit now pending
for the cutting of the hickory timber from said lands."
Coventry purports to have taken Vennum's acknowl-
edgment to said deed on September 22, 1923, and cer-
tifies: "My commission expires November 28, 1927."
How did Coventry know he was to be reappointed
notary public on November 28, 1923, for another term?
Nothing could be plainer than that the Vennum and
Dazey deeds were after-thoughts and that there was
not even a pretended consideration on October 17,
1923.  The deeds from Vennum to Dazey and from
Dazey to the Standleys were never recorded and were

never heard of by appellees until the bankruptcy pro-
ceedings in 1924. This view is strongly corroborated by
the particularity in and laborious correspondence
which passed between Dazey and Standley prior to the
pretended transaction. The title to section five passed
from the Bank of Saginaw to the Jerome Hardwood
Lumber Company for a consideration of one dollar
on January 29, 1924. The records in evidence fur-.
ther established that all regular and special taxes as-
sessed upon section five, running from eight to twelve
hundred dollars per annum, were in default and not
paid for the years 1919, 1920, 1921 and 1922 and the
land had been sold for taxes. As to the value of the
land, the witness Breckenridge had been a civil engi-
neer and surveyor for thirty-five years, and at the re-
quest of appellant Dazey had surveyed and cruised
the lands in October, 1923. He placed a valuation
upon the lands of ten to twelve dollars per acre, in-
cluding all timber upon the lands, and this estimate is
fairly in line with the great weight of the evidence.
None of the appellants, Dazey, Vennum or Pearl
Standley, testified in the cause and the testimony is
overwhelming that Dazey gave no consideration for
the Standley farm and knew the purpose of the entire
transaction and doubtless conceived it.

In order to secure credit at appellee First National
Bank, Oliver Standley made a statement of his prop-
erty and claimed to own a threshing outfit, valued at
$2,000; fourteen horses, valued at $1,400; two mules,
valued at $200; thirteen cattle, valued at $400; thirty
hogs, valued at $500; farm implements, valued at $500;
1,600 bushels of corn; fifty bushels of wheat and oats,
valued at $800, and the undivided one-half of said
eighty acres of land, which he represented to be of
the value of twelve thousand dollars. His statement
over his signature showed that he owed no debts. Ap-
pellee's president, with a justice of the peace, went to
the Standley home a little after noon on October 17,

1923. A real estate mortgage and a chattel mortgage had been prepared and the officer was taken to the farm to take the acknowledgment of appellants to the instruments. There had been some talk with appellants that the bank would have to have security. The indebtedness had been accumulating for four or five years and notes had been renewed. Humphrey, the bank's president, went into the house and talked the matter over with Mr. and Mrs. Standley. He stated to them that the bank was very anxious to get the matter fixed up that day. Standley said he would not sign the papers without consulting his lawyer. Humphrey offered to take the Standleys to consult their lawyer. They refused to go. Humphrey told them that the matter had to be fixed that day and that he was on his way to Shelbyville, the county seat. Humphrey left the Standley home at about twelve-thirty and arrived in Shelbyville at one-fifteen, and entered the notes in judgment at twenty minutes after two. The deed from the Standleys had been filed for record at just two o'clock on that day. It is conceded that Standley owned a tractor and an outfit of farming implements at the time the judgments were entered, and that the farm was stocked with cattle and horses. Standley also owned an automobile. Nevertheless, the sheriff of said county was able to levy only upon "one pile of junk, one sled, one horse, one set of tools, one set of single harness and five shares of stock in the Moweaqua Farmers Cooperative Grain Co." All the other personal property had been "spirited" away. Later, a schedule of personal property was presented, claimed to have been made out by his sons, and all the property listed in it was claimed as exempt in the bankruptcy court. Appellant Standley testified that all of his personal property except that scheduled, belonged to his three sons; that he left Shelby county after October 20, 1923; that his wife left with him; that they had started for Arkansas

and went to Decatur, where they stayed a week and traded their old car for a five-passenger Ford car; that he was looking for work—"any kind of work I could get to do to make a dollar—"; that they left Decatur for Arkansas and went to Dana, Indiana; that they did not go to Dana but near there; that they stayed all night at a widow woman's. "This woman was short of corn huskers and I stopped to shuck corn a while and the roads got bad." They left the widow's home in February, 1924, and at that time Standley went to Arkansas for a few days. Since his return he and his wife have been living on the eighty acres of land, claiming that one of their sons, who lived at some other place, had a lease from Dazey of this eighty acre tract. The son did not testify. Dazey pretends not to have paid the taxes upon the eighty acres of land as a dutiful owner should do, but has permitted the lands to be sold for taxes and Coventry has bid them in.

The record is full, complete and most convincing that the transaction was fraudulent and entered into on the part of appellants, Oliver Standley, Pearl Standley and J. E. Dazey, for the purpose of defeating appellees in the enforcement of their judgment debts. No cross error has been assigned by appellees as to the homestead estate of the Standleys in the land. The decree, therefore, of the circuit court of Shelby county should be and is affirmed.

*Affirmed.*